Good morning, Your Honors. My name is David Chase, attorney for the appellants, Goodrich. With me is my associate counsel, Victor Hobbs, at the counsel table. The Goodrichs are, or counsel, would you please speak up? I'm sorry. Yes, Your Honors. The Goodrichs were homeowners in a suburb of Los Angeles, Riverside, in the eastern portion of the Central District, California. In 1999, they petitioned the court to save their home from foreclosure. They requested, or at least the stay arising from 111 U.S.C. 362, arose, appellees went to sale, they continued to pay the money, and they paid... Without protection, of course. In fact, this was a Chapter 13. Yes, Your Honor. And for some period of time, and the court initially, of course, the stay was in effect, there was protection, and a plan was confirmed, and then later the debtors defaulted. Well, those are issues of dispute. The case was eventually dismissed, and what the debtors... It's for default, for failure to make the payments to the trustee. That may be correct, and I apologize for not having that fact in the record, but the case was dismissed. That is undisputed, and the stay expired. However, during the course of the case, approximately 24,000 of funds were paid while the appellees retained the state foreclosure deed. But in exchange, you were allowed to stay on the property. Again, appellants concede that, Your Honor, but that, we believe, was an issue that should have been tried. For instance, they could have walked away from the home. If they're entitled to the property, maybe at that point, since they're... That's not very realistic, is it? Well, in this particular case, as in many bankruptcy cases, the debtors were somewhat under financial duress, and eventually they did lose the home. So I think the issue of whether they could have made the decision at that time, two years prior to the rescission of the deed and the granting back to the good riches... Well, I guess the problem I have here is I don't see how your clients were damaged in this situation. There was a foreclosure. It was immediately recognized that it came a day or two after the bankruptcy. Therefore, it was too late to foreclose, but the lender conducted itself, and so did the borrowers, in an understanding that this was now... The foreclosure was moot because it was a bankruptcy pending. And isn't that the way it went for quite some time? Well, Your Honor agrees with the trial judge that basically no harm, no foul, but we believe from a technical title standpoint, the debtor had other claims that didn't arise solely out of that stay violation. But how was he damaged? As a technical matter, you're probably right. The foreclosure documents were never removed as a record, but what damage did your clients suffer? Again, they paid the $24,000, which they could have walked away at that point. The bank's going to own the home claim title. They could have saved that money. That could have inured to the benefit of them and their family. Bank was paid in full. They'd have to move somewhere else. They couldn't stay in the house. That's correct, Your Honor. So isn't that a trade-off? Yes, it is, Your Honor. And the trial judge made that judgment call that there would be some set-off at a certain point, but it was decided in the context of a dismissal and a summary judgment, and we believe that should have been at least tried. They should have had the ability to prove that, for instance, the rent would have been less than the monthly payment, or they could have moved where they eventually ended up in Las Vegas, where maybe the rent was less. And that type of accounting issue, we believe, should have been decided at a trial rather than dismissal under 12B and summary judgment under Rule 56. Thank you, Counsel. Thank you. We'll hear from the Planner's Mortgage. Good morning, Your Honor. May it please the Court. My name is Edward Weber. I'm the attorney for the appellee, Union Planner's Mortgage. It is now known as Regent's Mortgage. And I think the real problem here is the debtors did exactly what they intended to do when they filed this particular Chapter 13. They wanted to keep the house. In order to keep the house, they tried to make payments. They ultimately did fail. And the problem is once they failed and the foreclosure actually occurred after they failed in this case, then they turned around and said, hey, wait a minute, we want our money back. And that doesn't seem to be an equitable result. The other problem is they waited until there was a default. In fact, there was a relief from stay. The bank obtained relief from stay before the dismissal of the case. So the stay was terminated prior. And that was due to the default of the regular monthly mortgage payments. And the bank proceeded to foreclose on that basis. That's when they ran into the deed, of course, and said, well, wait a minute, we forgot to rescind this. They rescinded. They started over and they did it properly. They never acted on the deed that was never rescinded. They acted as if the 13 was in effect. They went along with the plan. They accepted payments. And they went through with the case as if the violation had never occurred. We're not arguing the violation didn't occur. The issue is damages. As a technical matter, counsel is probably right. Sure. How do you distinguish the Escondo's case, which sets a pretty low bar here for actual damages? Because there was no continued actual action on the violation. In other words, the bank itself really didn't realize that it didn't record. And again, acted as if it had been rescinded. They filed a proof of claim. They participated in the confirmation process. Then there was a default. They brought a motion for relief from stay saying, we wish to foreclose because the payments are in default. They didn't say, well, we already have title, so we're just going to go foreclose. They recognized that that title was no good. And they recognized that it should have been rescinded in the beginning. So they didn't really continue or do anything that was consistent with the recorded deed. They did everything that they were supposed to, which was inconsistent with that recorded deed and more consistent with the rescission, which is what should have taken place. And we all know it didn't. That's not a secret. But they didn't do anything to harm the debtor. They didn't try to kick them out. They didn't try to commence an eviction. They didn't try to collect any money they weren't otherwise entitled to. The money that we're arguing about here are post-petition mortgage payments that were necessary and required in order for the debtors to stay in this Chapter 13 case. They did it for as long as they could. Apparently, they couldn't do it anymore. And they eventually defaulted. But it wouldn't be fair to give it back just because record title rested in the bank's name, all because of a mistake and all because everybody acted the way they should have throughout the case. It doesn't make any sense. And I do believe that in terms of an equitable result, they did get to stay in the property for those, I believe it was 21 months, is what's being discussed here. So it's not like they didn't get anything for the money that they paid. And now they're just asking for the money back. They didn't try to say, hey, in the beginning, we'll give the property and walk away. They tried to stay in the property. They prosecuted the Chapter 13 case. They went through. They had a plan confirmed. And they attempted to make these payments. And now they only come back after they fail and after they've actually lost the property. And I just don't believe that makes any sense. Thank you, counsel. Thank you. Mr. Goodrich, excuse me, Mr. Chase, you have some reserve time? Yes, Your Honor. I believe the Escanos case is on point. In that case, Judge Adler in the case, when they only prosecuted a muni action for three weeks. In this case, it's two years. And debtors did demand a jury trial. That's not really an issue here. But we believe the facts. There's never been an accounting. And besides the allegation of the automatic stay violation, there were five other claims under the Fair Debt Collection Practice Act, fraud, breach of contract, and one other, which escapes me at the time. I think we're familiar with those claims, counsel. Yes, Your Honor. And so I believe the Escanos case is on point. And the issue is whether a two-year violation is allowed to stand and remain uncompensed and whether the trial court should at least try the case. Let me point out one difference here. In the Escanos case, there was some evidence that the violation of the automatic stay was willful. Was there any evidence of any kind here to that effect? We believe at trial we could have proven. Counsel states that, yes, they abided by certain rules and provisions, but that was part of the litigation technique to extract money from the debtor, comply with certain provisions, but not comply with others. So we believe the debtor's declarations and the judicial notice showed that there was 24,000 in damage, and that was what the trial court adjudged to not be damage. So respectfully to the trial court, we would submit that that was an error of law. Thank you, counsel. Thank you. The case just argued will be submitted for decision.
judges: Dw Nelson, O'Scannlain